**THIERMAN BUCK LLP**
Mark R. Thierman, Nev. Bar No. 8285
Joshua D. Buck, Nev. Bar No. 12187
Leah L. Jones, Nev. Bar No. 13161
7287 Lakeside Drive
Reno, Nevada 89511
Telephone: (775) 284-1500
Fax: (775) 703-5027
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BRANDY WELCH (formerly known as BRANDY ROODE) and HEATHER BLACKMUN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>GOLDEN GATE CASINO, LLC, d/b/a GOLDEN GATE HOTEL & CASINO; and DOES 1 through 50, inclusive,<br><br>       Defendants. | Case No.:  2:13-cv-01089-RFB-GWF<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**<br><br>Hon. Richard F. Boulware, III<br>Hearing: January 3, 2017<br>Time: 2:30 p.m.<br>Ctrm: 7C |

Plaintiffs BRANDY HILL (formerly known as BRANDY ROODE and formerly known as BRANDY WELCH) (hereinafter referred to as "Welch") and HEATHER BLACKMUN ("Blackmun"), on behalf of themselves and all others similarly situated ("Plaintiffs"), individually and as Class Representatives, by and through their counsel of record, hereby move the Court for an order granting final approval of the class and collective action settlement in this matter.  The Court preliminarily approved the Parties' Settlement on August 22, 2016. (ECF No. 128.)

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS

1

2   This Motion is made pursuant to Federal Rule of Civil Procedure 23(e) and the Fair

3   Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.  This Motion is based on the following

4   memorandum of points and authorities, the Parties' Settlement Agreement and General Release

5   of Claims (previously filed as ECF No. 125-1), the accompanying declarations, exhibits, and

6   proposed order, all other papers on file in this action, and such other evidence or arguments the

7   Court may receive before deciding this Motion.

8   Dated:  December 9, 2016.                     THIERMAN BUCK, LLP

9

10                                       By: /s/ *Leah L.  Jones*

11                                           Mark R. Thierman
                                            Joshua D. Buck
12                                           Leah L. Jones

13                                           *Attorneys for Plaintiffs*

14              **MEMORANDUM OF POINTS AND AUTHORITIES**

15   **I.     INTRODUCTION**

16          Plaintiffs, on behalf of themselves and others similarly situated, seek final approval of

17   this  class  and  collective  action  settlement.  (ECF  No.  125-1,  hereinafter  "Settlement

18   Agreement").[1]  On August 22, 2016, the Court entered an Order granting the Joint Motion for

19   Preliminary Approval of Class Action Settlement. (ECF No. 128.)  The order preliminarily

20   approved  the  Settlement  Agreement,  conditionally  certified  the  settlement  class,  approved

21   distribution of notice of preliminary approval, confirmed the selection of CPT Group, Inc., as

22   the claims administrator and scheduled the final approval and fairness hearing for January 2,

23   2017. *Id.*

24          Subject to Court approval, Plaintiffs have settled their claims and those of Class

25   Members  for  a  Gross  Settlement  Amount  of  $750,000.00  on  a  claims  made  basis.   *See*

26

27   _____

28          [1] For purposes of consistency, and unless otherwise noted, all terms herein shall have the
     same meaning and definition as in the Parties' Settlement Agreement.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

1   Settlement at ¶ 6.   The final class list consisted of 422 Class Members.  *See* Declaration of

2   Taylor Mitzner hereinafter "Mitzner Dec." at ¶ 5.  Of the 422 Class Members, only 5, less than

3   two percent [1.18%] of the Class Members have requested exclusion. *Id.* at ¶ 12.   As a result of

4   this mailing, 150 class members, 35.55% of the class, have submitted valid claim forms. *Id.* at

5   ¶17.  The 150 valid claims represent an approximate amount of $215,634.20, 49.46% of the Net

6   Settlement Amount, which is the amount of money available to pay claims after subtraction of

7   attorney fees, costs, class leader enhancements, and settlement administration costs. *Id.* at ¶ 18.

8   With attorneys' fees, costs, the proposed enhancement, and administration costs, Defendants

9   will pay out approximately $528,384.20[2], which is approximately 70.45% of the total settlement

10  value.  *See* Declaration of Leah L. Jones, hereinafter "Jones Dec." at 24.

11          The class administration procedures have been completed by CPT Group, Inc., as

12  ordered by the Court. *See* Mitzner Dec." at ¶¶ 3-8.  The deadlines for class members to submit

13  claim forms, exclusion forms, or opt out of the settlement have passed. *Id.* at 11. No objections

14  were submitted and only 5 class members opted out.  *Id.* at ¶¶ 15 and 12, respectively.  Of the

15  150 valid claim forms submitted, seventy-eight (78) were submitted via the interactive Web

16  site. *Id.* at ¶ 11.

17          The proposed Settlement satisfies all the criteria for final settlement approval under

18  federal law because it is fair, adequate, and reasonable.  *See Churchill Village, L.L.C. v. GE*,

19  361 F.3d 566, 575-76 (9th Cir. 2004).  In Class Counsel's experience, this is an exceptionally

20  positive response from class members.  *See* Declaration of Mark R. Thierman, hereinafter

21  "Thierman Dec." at ¶ 21.)   Furthermore, no objections have been filed with the Claims

22  Administrator (hereinafter "CPT"), Class Counsel, or the Court. *See* Mitzner Dec. at ¶ 15.  The

23  overwhelmingly positive response of the Class Members to the Settlement—including minimal

24  exclusions and ***no*** objectors—provides strong support that final settlement approval is

---

[2] Class payout of $215,634.20, Enhancement payments of $24,000.00, Attorneys' fees of $250,000.00, costs of $25,000.00, and Claims Administrator fees of $13,750.00 total to a sum of $527,913.68, or 70.39% of the Gross Settlement Fund.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email :info@thiermanbuck.com www.thiermanbuck.com

appropriate.  *See Stoetzener v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that objections of 29 members out of a settlement class of 281—over 10 percent—"strongly favors settlement"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of a class was "persuasive" that a settlement was adequate). Because the Settlement provides a substantial benefit to the Parties and Class Members, Plaintiffs request that the Court approve the Parties' Settlement as fair, adequate, and reasonable, and enter judgment accordingly.

## II.       FACTUAL BACKGROUND

### A.       Plaintiffs' Lawsuit

This wage and hour case concerns both working employees off the clock without compensation and miscalculation of the "regular rate" under both federal and Nevada state law for purposes of computing overtime due.   Plaintiffs filed their original complaint June 20, 2013.[3]   Plaintiffs asserted claims under the Fair Labor Standards Act ("FLSA") for: (1) unpaid wages stemming from Golden Gate's policy of failing to pay Dancer/Dealers their regular rate of pay for all hours worked for the time spent engaging in pre-shift meetings and/or training; and (2) failing to pay employees a rate not less than one and one-half times their regular rate of pay for all hours worked over forty (40) in a workweek, failing to include all remuneration for employment in the calculation of both Dancer/Dealers and other non-exempt hour paid employees' rates of pay for overtime pay, and failure to pay Dancer/Dealers for time spent in

---

[3] The original complaint asserted thirteen (13) causes of action: (1) Failure to Pay Wages for All Hours Worked in Violation of Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"); (2) Failure to Pay Overtime in Violation of 29 U.S.C. § 207; (3) Failure to Compensate for all Hours Worked in Violation Of NRS 608.016 and 608.140; (4) Failure to Pay Minimum Wages in Violation of the Nevada Constitution; (5) Failure to Pay Overtime Wages in Violation of NRS 608.018 and 608.140; (6) Failure to Pay Correct Overtime Rate in Violation of NRS 608.018 and 608.140; (7) Failure to Timely Pay All Wages Due and Owing Upon Termination Pursuant to NRS 608.140 and 608.020-.05; (8) Breach of contract; and individual complaints on behalf of Ms. Welch for (9) Sex/Pregnancy Discrimination; (10) Intentional Infliction of Emotional Distress; (11) Negligent Infliction of Emotional Distress; (12) Battery; and (13) Assault. Ms. Welch's individual claims were settled in February 2014 after a settlement conference with the Magistrate Judge.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

pre-shift meetings and training amounting to hours worked over forty (40) in a week.  Plaintiffs asserted claims under Nevada wage and hour law ("NWHL") for: (3) failure to compensate employees for all hours worked; (4) failure to pay minimum wages for time spent engaging in pre-shift meetings and training; (5) failure to compensate employees for time spent engaging in pre-shift meetings and training at the applicable rate for all hours worked over eight (8) hours in a day and over forty (40) in a week; (6) failure to pay all former employees wages due and owing at their next scheduled pay date; and (7) breach of contract for failure to compensate employees for hours spent engaging in pre-shift meetings and training at the agreed upon rate of pay.  Several motions to dismiss were filed and Plaintiffs filed a Second Amended Complaint, and ultimately, on October 7, 2016, the operative Third Amended Complaint was filed. (ECF No. 116, the "Complaint".)   The motion practice is more thoroughly provided in the Joint Motion for Preliminary Approval. (ECF No. 125.)

### B.    Negotiation and Settlement

Both Parties provided significant written discovery in the form of multiple disclosures, Defendant deposed named Plaintiffs and two putative class members who have filed consents to sue, and each side apprised the other of their respective factual contentions, legal theories and defenses. *See* Jones Dec. at ¶ 9.  As a result of the information obtained through discovery, as well as Plaintiffs' counsel's independent investigations, Plaintiffs' counsel were fully able to evaluate potential liability and estimate damages.  *Id.*

The Parties agreed to a private mediation and selected attorney David Rotman to assist the Parties in resolving their issues and attempt to settle the case.  Mr. Rotman is a well-respected employment mediator.  Jones Dec. at ¶ 10.  As a result of the mediation, the Parties were able to resolve their differences and agree on the general terms of a compromise and settlement. *Id.*  A Joint Notice of Tentative Settlement was filed with the Court on January 4, 2016. (ECF No. 121.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

### III.    SUMMARY OF SETTLEMENT TERMS

The Parties support this Settlement.  (ECF No. 125.)  The issues in this case have been fully investigated and litigated by counsel for both Parties.  *See* Jones Dec. at ¶ 9; Notice at ¶ IV.  Defendant denies all allegations in the lawsuit, denies any liability or wrongdoing of any kind associated with the claims alleged in this action, and further deny that, for any purpose other than settling this action, this action is appropriate for class treatment.  *See* ECF No. 125; Notice at ¶ IV.   The Parties acknowledged that even if a class was certified, trial would be lengthy and have risks. *See* Jones Dec. at ¶ 14; Notice at ¶ IV.  Plaintiffs may not prevail at trial which would result in no recovery whatsoever. *Id.*  And, even if Plaintiffs won at trial, damages might not exceed the amount of this Settlement and the judgment could be appealed resulting in further lengthy delays. *Id.* Likewise, even if Defendant won at trial, there would be costs, expenses and attorneys' fees, business interruption and other adverse consequences that come from litigation.  *Id.*  All parties believe that the best course of action is to amicably resolve these issues. *Id.*; Settlement Agreement at ¶ 16.

The Parties' Settlement provides for significant monetary recovery on behalf of the Class, releases those claims alleged or related to the Complaint, and sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement.

### A.    The Recovery.

The Settlement provides for a maximum settlement amount of $750,000 (the "Gross Settlement Amount").   *See* Settlement Agreement at ¶ 6; *see also* Notice of Settlement, hereinafter Notice attached as Exhibit A to ECF No. 125-1 at ¶ II.   The following approximate breakdown applies to payments from the Gross Settlement Amount:

- $436,000 in estimated settlement funds to the class;
- $13,750 in settlement administration costs;
- $10,000 enhancement each, to named Plaintiffs Brandy Hill (formerly Welch)

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

and Heather Blackmun for their participation in the lawsuit;

- $2,000 enhancement each, to Jessica Nunes and Mary Hernandez, who filed a Consents to Sue and provided depositions in this case;

- $250,000 in attorneys' fees; and

- $25,000 in actual costs.

*See* Settlement Agreement at ¶¶ 5-9; Notice at ¶¶ II.

The Defendant's payments to Participating Settlement Class Members will be allocated as wages, for tax purposes. *Id.* at ¶ 12.  The Claims Administrator shall pay from the Total Class Payout all payroll taxes on all payments made to the Participating Settlement Class Member. *Id.* Defendant shall put a stop payment on any payment checks that remain uncashed ninety (90) days after such checks are mailed by the Claims Administrator and those funds shall remain the property of Defendant but will not affect the Release of Claims as provided in the Settlement. *Id.* Settlement awards for Participating Class Members will be paid out of the Net Settlement Fund based on the formula described below:

Each Settlement Class Member who returned a valid, timely, and properly executed Claim Form ("Participating Settlement Class Members") is entitled to a share of the  Net Settlement Amount.  The distribution formula will be as follows:

- The Claims Administrator will calculate the total number of hours worked by all of  the Settlement Class Members ("Total Hours").

- The Claims Administrator will then divide the Total Hours by the hours worked by each Participating Settlement Class Member that will yield a percentage allocation  for each Participating Settlement Class Member ("Individual Percentage  Allocation").

- The  Claims  Administrator  will  then  multiply  the  Individual  Percentage Allocation  to the NSA, which will yield each Participating Settlement Class Member's  individual claim share ("Individual Claim Share").

- The Claims Administrator will also add all the Individual Claim Shares together

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

to yield the Total Class Payout.

*Id.* at ¶ 12; Notice at ¶ III.A.

**B.      The Release.**

Upon final approval of this Settlement Agreement, each member of the Settlement Class who does not request exclusion [or "who opts in" for FLSA] resolves all claims, arising out of or related to the claims and facts asserted in the Lawsuit, up to and through the date of preliminary approval. *See* Settlement Agreement at ¶ 18; Notice at ¶ V; ECF No. 125-1, Ex. B, hereinafter "Claim/Consent Form."  Upon final approval of this Settlement Agreement, each member of the Settlement Class, regardless of whether that member submitted a timely Claim Form, to the extent permitted by law, releases Defendant and any parent, subsidiary, affiliate, predecessor or successor, and all agents, employees, officers, directors and attorneys thereof ("Releasees"), from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, actions or causes of action contingent or accrued for, which relate to any claims for the nonpayment of or failure to pay wages, minimum wages, or overtime, underpayment of wages or overtime, meal period violations or unpaid premiums, inaccurate wage statements, late payment of wages, interest or penalties, or any other claims which relate to the allegations and claims asserted in the Lawsuit, including without limitation to, breach of contract claims; off the clock claims; overtime claims; Nevada Labor Code claims; all claims under Nevada Revised Statutes (NRS), all claims under the Nevada Constitution; claims for restitution and other equitable relief, liquidated damages, or punitive damages; claims for waiting time penalties, unpaid or underpaid wages or overtime, unpaid break premiums, or penalties of any nature whatsoever, or any other benefit claimed on account of the allegations asserted (or any allegations that could have been asserted based on the facts alleged) in the Lawsuit; and for FLSA Collective Class Members who opt into the FLSA Settlement, a release of all claims under the FLSA. This release shall apply to all claims arising during the Class

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

Period (the "Released Claims"). *See* Settlement Agreement at ¶¶ 18, 19 and 20; Notice at ¶ VI; Claim/Consent Form.

### C.      The Settlement Mechanism.

The Parties agreed and the Court approved CPT, Group as a third-party Claims Administrator to administer the claims process. *See* Settlement Agreement at ¶ 8; ECF No. 128. The Settlement provided for the Claims Administrator to send out notice explaining the terms and conditions of the Settlement to all Class Members. *Id.* The Notice and Claim/Consent Form approved by the Court (ECF No. 125-1) and sent to Class Members is attached as Exhibit A to the Mitzner Dec. at ¶ 4.

The Settlement provided that following the notice period the Court would hold a final "fairness" hearing to provide final review and approval of the Settlement. *Id*. The Notice advised Class Members about the fairness hearing and their opportunity to attend the hearing and make their views known. *Id.* At the fairness hearing, the Parties will address any issues raised by Class Members or the Notice process itself, and the Court will have a second opportunity to review the Settlement in full.

### IV.     THE COURT-APPROVED NOTICE PROCESS

#### A.      Preliminary Approval

On August 22, 2016, the Court granted preliminary approval of the Settlement. (ECF No. 128.) In doing so, the Court authorized the sending of Notice, Claim/Consent forms, and Exclusion forms to all Class Members, certified the Settlement Classes for settlement purposes, confirmed Plaintiff as Class representative, confirmed Thierman Buck, LLP as Class Counsel, and confirmed CPT Group, Inc. as the Claims Administrator. (*Id*.)

#### B.      Notice To The Class

The Notice and Claim/Consent Form approved by the Court (ECF No. 125-1) and sent to Class Members is attached as Exhibit A to the Mitzner Dec. at ¶ 4. The Notice process was flawlessly executed by third-party claims administrator, CPT, Group. *See* Jones Dec. at ¶ 15.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1  The Notice packet sent to all Class Members provided all the necessary notice and disclosures

2  to Class Members so that they could make an informed decision about whether to participate

3  (do nothing), opt-out (submit an exclusion form), or object to the Settlement.  To date, no

4  objections have been filed with the Claims Administrator, Class Counsel, or the Court.  *See*

5  Jones Dec. at ¶15. The final class list consisted of 422 Class Members.  Mitzner Dec." at ¶ 5.

6  Of the 422 Class Members, only 5, less than two percent [1.18%] of the Class Members have

7  requested exclusion. *Id.* at ¶ 12. As a result of this mailing, 150 class members, 35.55% of the

8  class, have submitted valid claim forms. *Id.* at ¶ 17.

9  **C.  Class Participation and Settlement Awards**

10  The 150 valid claims represent an approximate amount of $215,634.20, or 49.46% of the

11  Net Settlement Amount, which is the amount of money available to pay claims after subtraction

12  of attorney fees, costs, class leader enhancements, and settlement administration costs. *Id.* at ¶

13  18.  The average settlement payment per Class Member is estimated at $1,437.56.05.  *Id.* at ¶

14  19.  There are no objectors.  *Id.* at ¶ 15; Jones Dec. at ¶¶ 15-16.  In Class Counsel's experience

15  this is a positive response.  *See* Thierman Dec at ¶ 21; Jones Dec. at ¶¶ 15-16.

16  **V.  THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL**

17  The law favors settlement, particularly in class actions and other complex cases where

18  substantial resources can be conserved by avoiding the time, cost, and rigors of formal

19  litigation. *See Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004) (noting

20  "strong judicial policy" favoring settlements reached through arms-length, non-collusive

21  negotiations); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (endorsing the

22  trial court's "proper deference to the private consensual decision of the parties" when approving

23  a settlement); *Franklin v. Kaypro*, 884 F.2d 1222, 1227 (9th Cir. 1989) ("Litigation settlements

24  offer parties and their counsel relief from the burdens and uncertainties inherent in trial . . . [t]he

25  economics of litigation are such that pretrial settlement may be more advantageous for both

26  sides than expending the time and resources inevitably consumed in the trial process."); *see*

27  *generally Newberg On Class Actions* § 11.41 (4th ed. 2002) ("*Newberg*").

The standard for final approval is whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A settlement is fair, reasonable, and adequate, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* § 21.61 (Fed. Jud. Ctr. 2006) ("*Complex Manual*"). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). These factors include: (1) the amount offered in the settlement, (2) the reaction of the class to the proposed settlement, (3) the strength of the plaintiffs' case balanced against the "risk, expense, complexity, and likely duration of further litigation" and the "risk of maintaining class action status throughout the trial," (4) the "extent of discovery completed" and the "stage of the proceedings," and (5) the informed views of experienced counsel. *See Hanlon*, 150 F.3d at 1026; *Staton*, 327 F.3d at 959.

These factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances. *Torrisi v. Tucson Elec. Power Co.*, 8F.3d 1370, 1375 (9th Cir. 1993). In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 625 (internal citations omitted). It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness. *Id.* at 628. Indeed, the Court's "role in intruding upon

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email :info@thiermanbuck.com www.thiermanbuck.com

what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *Schiller v. David's Bridal, Inc.*, No 10-00616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012) (citing *In re Imperial Corp of Am.*, 92 F.3d 1502, 1506 n.5 (9th Cir. 1996)).

## A.    The Settlement Is Presumed To Be Fair.

Significantly, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Newberg* § 11.42 (4th ed. 2002). Such is the case here.  Class Counsel engaged in extensive factual investigation (informally and through formal discovery) and participated in direct settlement discussions.  *See* Thierman Dec. at ¶¶ 14-17; Jones Dec. at ¶ 14.  Class Counsel are experienced in wage-and-hour litigation, and have obtained over half a billion dollars for class members since 1997. *See* Thierman Dec. at ¶ 8.  Finally, there are no objectors to the Settlement and only 5 of the 422 Class Members submitted Requests for Exclusion Forms. *See* Mitzner Dec. at ¶ 12; *See also, Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992) (recognizing that fairness of a class action settlement may be inferred if few class members object to it).   Accordingly, the Settlement should be presumed fair.

## B.    The Settlement Value Supports Final Approval.

The Settlement provides for a maximum settlement amount of $750,000, which represents a significant recovery by Plaintiffs and Class Members.  This is not a Settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands.  Instead, the class size here is relatively small but class members are eligible for significant financial benefit—an average payment of $1,437.56. *See* Mitzner Dec. at ¶ 19.

Given the significant legal uncertainty, and the real risk of receiving nothing at the end of the day, the $750,000 settlement represents a substantial recovery.  Although a larger award was theoretically possible by litigating this case to the end of trial, "the very essence of a

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

settlement is compromise, a yielding of absolutes and an abandoning of highest hopes" in exchange for certainty and resolution. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

### C.   The Class Response Supports Final Approval.

The Class Members have claimed 49.46% of the Net Settlement Amount. *See* Mitzner Dec. at ¶ 18. This is an exceptionally high participation rate. Claim rates of 10 percent or less are well within the realm of acceptable claims-made settlements approved by federal courts. *See e.g., Tait v. BSH Home Appliances Corp.,* 2015 WL 4537463, at *8 (C.D. Cal. July 27, 2015), *appeal dismissed* (Jan. 13, 2016) ("[a] claims rate somewhat above 3% was likely a realistic possibility" *citing Sylvester v. CIGNA Corp.,* 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'[C]laims made' settlements regularly yield response rates of 10 percent or less."). The fact that less than 2% of Class Members opted out and there are no objectors also strongly favors final approval. *See Nat'l Rural,* 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed settlement action are favorable to the class members.")

### D.   The Risks of Continued Litigation Support Final Approval.

Having engaged in meaningful discovery and significant discussions regarding their respective legal positions, both parties were able to assess the relative strengths and weaknesses of their claims and defenses. *See* Thierman Dec. at ¶ 15; Jones Dec. at ¶¶ 13-14. Class Counsel are experienced class-action litigators, and understand that the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many more months, even years. *Id.* Having reviewed relevant data and employment information, counsel for the Parties arrived at a reasonable resolution through a protracted and arm's-length direct negotiation process, which continued into all details of the Settlement Agreement and ancillary documents. *Id.* at ¶ 16.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1   In considering final approval, the Court should weigh the immediacy and certainty of

2   substantial settlement proceeds against the risks inherent in continued litigation.  *See Complex*

3   *Manual* § 21.62.  The trial of this action, were it to occur, could easily exceed several weeks in

4   length.   Moreover, individual litigation would not be economical even for those with the

5   finances, sophistication, and tenacity to secure legal representation and persevere through years

6   of individual litigation.   The Parties' Settlement Agreement, on the other hand, provides

7   immediate relief to all Class Members in a prompt and efficient manner and therefore is

8   consistent with the "overriding public interest in settling and quieting litigation" that is

9   "particularly true in class-action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

10  Cir. 1976).

11      **E.      The Recommendation of Experienced Counsel Favors Final Approval.**

12      "[P]arties represented by competent counsel are better positioned than courts to produce

13  a settlement that fairly reflects each party's expected outcome in litigation."   *In re Pacific*

14  *Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  The "recommendations of

15  plaintiffs' counsel should be given a presumption of reasonableness," particularly when counsel

16  has significant litigation experience in similar cases.  *Boyd v. Bechtel Corp.*, 485 Supp. at 622;

17  *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal 1980) ("[T]he fact that

18  experienced counsel involved in the case approved the settlement after hard-fought negotiations

19  is entitled to considerable weight."). Hence when evaluating a proposed settlement, a court—

20  absent evidence of fraud, collusion, or the like—should be hesitant to substitute its own

21  judgment for that of counsel.  *See Flinn v. FMC Corp.*,528 F.2d 1169, 1173 (4th Cir. 1975).

22      Here Class Counsel, who have extensive experience prosecuting and litigating

23  employment cases and complex class actions, and who conducted a legal and factual

24  investigation into the claims in this case, and who have actively litigated this case for over a two

25  year, firmly believe the proposed Settlement is fair, reasonable, adequate and in the best interest

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

of all Class Members.  *See* Thierman Dec. at ¶ 15; Jones Dec. at ¶ 14.  Accordingly, this factor also weighs in favor of final approval.

## VI.      THE CLASS REPRESENTATIVE PAYMENT SHOULD BE APPROVED

The Named Plaintiffs apply to the Court for a total of $24,000.00 in an enhancement payments for services rendered as representatives of the Class in prosecuting this Action[4], which is well within the range of reasonableness.  *See Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $300,000 to each named plaintiff in recognition of services to class by responding to discovery, participating in mediation process and taking the risk of stepping forward); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, the two Named Plaintiffs provided invaluable assistance to Class Counsel in explaining Defendant's pay policies and procedures and also incurred personal risk in bringing this lawsuit on behalf of other persons in the Class. *See* Jones Dec. at ¶ 18.  Plaintiffs have been held responsible for Defendants' costs if they were unsuccessful.  *Id.*; s*ee Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (holding named plaintiffs in wage-and-hour class action liable, jointly and severally, for defendant's attorneys' fees where defendant prevailed at trial).

Such service payments are recognized as serving an important function in promoting class action settlements.  For example, in *League of Martin v. City of Milwaukee*, 588 F. Supp. 1004, 1024 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class members . . . to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit.  Given the Named Plaintiffs' active participation in this litigation, and their courage for asserting such an action despite the inherent risks involved in litigation and fear of reprisals, the requested Enhancement Payments are fair and well-deserved. *See* Jones Dec. at ¶ 18.  Similarly,

---

[4] This Enhancement Payment is separate and apart from any other recovery to which the two Named Plaintiffs ($10,000 each) and the two opt-in deponents ($2,000 each) may be entitled as Class Members under the Settlement.

the two Dancer/Dealers who signed consent to sue forms and provided deposition testimony, similarly took substantial risks in participating in this litigation.  As a result of the named-Plaintiffs and Opt-in Plaintiffs' active participation in this litigation, and their courage for asserting such an action despite the inherent risks involved in litigation and fear of reprisals, the requested Enhancement Payments are fair and well-deserved. *See* Jones Dec. at ¶ 19. In addition, there have no objections by Class Members to the Enhancement Payment. Accordingly, the Court should approve Plaintiffs' request.

## VII.   PLAINTIFF'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

### A.   Class Counsel's Fee Award Is Properly Calculated as a Percentage of the Total Settlement Fund.

The Federal Rules of Civil Procedure expressly authorize an award of reasonable attorneys' fees and costs in a certified class action pursuant to the parties' agreement or to the extent otherwise authorized by law.  Fed. R. Civ. P.  23(e).  The FLSA also provides for attorneys' fees.  29 U.S.C. § 216(b).  Here, Class Counsel's fee request is one third (33⅓%) of the Gross Settlement Amount.  The requested amount is less than the attorneys' fees Plaintiffs agreed to pay on a contingency basis (35%), which is less still than the market rate of 40% to 50% in other contingency cases. Therefore, the requested amount is presumptively fair, reasonable, and appropriate.

Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of the common fund approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

In *Boeing*, the Supreme Court specifically addressed "whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thermanbuck.com www.thermanbuck.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

unclaimed portion of the fund." 444 U.S. at 473.  The Supreme Court found the total amount of the fund the proper denominator, approving fees of approximately $2,000,000.00 on a settlement valued at $7,000,000.00 where claims totaled $706,600 of $1,544,300 in unconverted debentures at issue, or 47% of the total.  The Court found that any latent reversionary right the defendant possessed contingent on the failure of absentee class members to exercise their present rights of possession did not defeat each class member's equitable obligation to share the expenses of the litigation.  *Id.* at 481-82.

Moreover, in *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997), the gross settlement fund was valued at $4.5 million, the parties agreed to 33⅓% of the total value for attorneys' fees, and the amount of the claims totaled just $10,000.  The district court assessed the attorneys' fees as 33⅓% of the $10,000 amount claimed.  The Ninth Circuit reversed, finding that the fee award should have been based on 33⅓% as agreed by the parties based on the total recovery value of $4.5 million: "[T]he court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund . . . ." 129 F.3d at 1027.

Under these principles, a percentage of the common fund fee award is properly based on the total settlement value of $750,000 in this case.  Class Counsel's request for approximately 33⅓% of this amount ($250,000) is fair compensation for undertaking complex, risky, expensive, time-consuming, and prolonged litigation solely on a contingency basis.  *See* Thierman Dec. at ¶¶ 24-25.  The request is in line with attorneys' fees awards in other wage-and-hour class actions.  *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450-51 (E.D. Cal. 2013) (gathering cases and awarding 33% of total settlement amount)

Courts have historically awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case.  *Newberg* § 14:6 (4th ed. 2008). "No general rule can be articulated on what is a reasonable percentage of a common fund.  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Id.*  Here, the Class Notice plainly disclosed that $250,000 (or 33⅓%) of the Settlement would be allocated to pay attorneys' fees.  The fact that no Class Member objected to the Settlement in general, or the attorneys' fees specifically, is an overwhelming indication that the attorneys' fees and costs sought here are fair, reasonable, and appropriate.  Accordingly, Class Counsel's attorneys' fee award should be approved.

**B.    The Lodestar Method of Calculating Attorneys' Fees Supports Plaintiffs' Counsels' Fee Request.**

"The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel Corp.,* 6 F.3d at 622; *see also Perdue v. Kenny A.,* 559 U.S. 542, 553 (2010) (noting that the lodestar figure includes "most if not all of the relevant factors constituting a reasonable attorney's fee"). However, there is a strong presumption that the lodestar figure represents a reasonable fee and any upward or downward adjustment of that figure is proper only in "rare and exceptional cases." *Van Gerwen v. Guar. Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citation omitted).

"Where the use of the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-AWI, 2012 WL 2117001, at *20 (E.D. Cal. June 11, 2012) (emphasis added); *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306 (3d Cir.2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.,* 497 F.Supp.2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check."); *see also Sutter Health Uninsured Pricing Cases,* 171 Cal.App.4th 495, 512, 89 Cal.Rptr.3d 615 (2009) (where

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

lodestar used to cross-check percentage approach, documentation of the lodestar figure is often submitted in summary or declaration form, without submission of full time records). Regardless, whether a court applies the lodestar or the percentage method, "we require only that fee awards in common fund cases be reasonable under the circumstances." *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990).

To determine the lodestar figure, the court multiplies the number of hours "reasonably expended" on the litigation by a "reasonable hourly rate." *See e.g. Intel Corp. v. Terabyte Int'l, Inc.* 6 F.3d 614, 622 (9th Cir. 1993) (*citing Hensley v. Eckerhart,* 461 U.S. 433, 103 S. Ct. 1933, 1939, (1983); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir. 1995).).  Courts engage in a two-step process when determining the reasonable amount of attorneys' fees to award under the lodestar method. *Wren v. RGIS Inventory Specialists,* 2011 WL 1230826, *16 (N.D. Cal. April 1, 2011) *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).  First, the court calculates the presumptive fee award, also known as the "lodestar figure," by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Grove v. Wells Fargo Financial Cal., Inc.* 606 F.3d 577, 582 (9th Cir. 2010).  Second, the court may adjust the presumptively reasonable lodestar figure based upon a list of twelve factors.  *See Hensley v. Eckerhart,* 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) (*Johnson's* "list of twelve" thus provides a useful catalog of the many factors considered in assessing the reasonableness of an award of attorney's fees … ." ); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 at 70 (9th Cir. 1975) *cert. denied,* 425 U.S. 951, 96 S. Ct. 1726, (1976) (citing *Johnson,* 488 F.2d at 717–19).

The *"Johnson list of 12"* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson,* 488 F.2d at 717–19.  However, the Supreme Court has noted that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Eckerhart,* 461 U.S. at 434 n. 9, 103 S.Ct. 1933.

### 1.    The *Johnson* factors support Plaintiffs' fee request.

Factor No. 1: *Time and Labor Required.*  Although hours claimed or spent on a case should not be the sole basis for determining a fee, they are a necessary ingredient to be considered. *Johnson*, 488 F.2d at 717 (citing *Electronics Capital Corp. v. Sheperd*, 439 F.2d 692 (5th Cir. 1971)).  The facts of the case, the legal issues involved, and the arguments advanced by Defendants required a significant amount of hours for this case to come to resolution.  Plaintiffs' Counsel has provided declaration testimony supported by individual attorney billing tables illustrating that the time expended by Class Counsel was necessary, there was no duplication of effort, and clerical tasks were not charged at an attorney's hourly rate. *See e.g. Johnson,* 488 F.2d at 717 (Duplication of attorney effort is discouraged and it is appropriate to distinguish between legal work and non-legal work which may command a lesser rate.); Jones Dec. at ¶¶ 20-21.

Factor No. 2: *The Novelty and Difficulty of the Questions.* The case required specialist skills to litigate the legal theories relating to both federal and Nevada state wage and hour law and the distinctions between the federal and state labor law at issue in the case.  Plaintiffs' Counsel are experienced class litigators, including in the area of employment class litigation pursuant to both federal and state labor law which contributed to the difficulty of the questions presented.  *See* Thierman Dec. at ¶¶ 4-12.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

Factor No. 3: *The Skill Requisite to Perform the Legal Service Properly*. The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. *Johnson,* 488 F.2d at 718. The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration. *Id.* Class Counsel's declaration testimony attests that each of the attorneys involved in this case has considerable experience with wage and hour class actions that support the hourly billing rates and the overall reasonableness of the Plaintiffs' fees request. *See* Thierman Dec. at ¶¶ 4-12; Jones Dec." at ¶¶ 4-6.

Factor No. 4: *The Preclusion of Employment by the Attorney Due to Acceptance of the Case.* This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes.   *Johnson,* 488 F.2d at 718.   As set forth in the supporting declarations by Class Counsel representing plaintiffs spent a combined 757.35 hours on this litigation. *See* Jones Dec. at ¶¶ 20-21. The nearly three years of litigation, extensive motion practice, and detailed discovery in this case necessarily precluded Plaintiffs' counsel from spending time for other purposes. *Id.*

Factor No. 5: *The Customary Fee*. The customary fee for similar work in the community should be considered. *Johnson,* 488 F.2d at 718. Class Counsel's declaration testimony supports the reasonable fee requests because the hourly rates charged by Class Counsel are comparable to the fees charged for similar work in the Ninth Circuit.   *See* Thierman Dec. at ¶¶ 24-25.

Factor No. 6: *Whether the Fee is Fixed or Contingent.* The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case. *Johnson,* 488 F.2d at 718. Class Counsel litigated the case on a contingency fee basis, which necessarily presented considerable risk. *See In re Sumitomo Copper Litig.,* 74 F.Supp.2d 393, 396–98 (S.D.N.Y. 1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1   he would charge a client who in advance of the litigation has agreed to pay for his services,

2   regardless of success. Nor, particularly in complicated cases producing large recoveries, is it

3   just to make a fee dependent solely on the reasonable amount of time expended.")  Federal court

4   decisions generally reason that the amount of any award of attorneys' fees should reflect any

5   contingencies which stood between the attorneys and their deserved fee. *See Johnson* 488 F.2d

6   at 718; *Lindy Bros. Bldrs., Inc. of Phila. v. American R. and S. San. Corp.*, 487 F.2d 161, 168

7   (3rd Cir. 1973); *Freeman v. Ryan*, 133 U.S.App.D.C. 1, 408 F.2d 1204, 1206 (1969); *State of*

8   *Illinois v. Harper and Row Publishers, Inc.*, 55 F.R.D. 221 (N.D. Ill. 1972). These decisions

9   parallel the American Bar Association's determination that attorneys deserve higher

10  compensation for contingent than for fixed-fee work. *Cf.* Canon 2 of the Code of Professional

11  Responsibility of the American Bar Association, Disciplinary Rule 2–106(B)–(8) (1983).

12        Plaintiffs' Counsel assumed a very real risk in taking this case on a contingency basis,

13  investing time, effort, and money in the action with no guarantee of recovery. Class Counsel's

14  fees requests is less than the attorneys' fees Plaintiffs agreed to pay on a contingency basis

15  equal to 35%.  *See* Thierman Dec. at ¶ 23.  This is still less than the market rate of 40% to 50%

16  in other contingency cases.

17        Factor No. 7: *Time Limitations Imposed by the Client or the Circumstances*. Priority

18  work that delays the lawyer's other legal work is entitled to some premium. *Johnson,* 488 F.2d

19  at 718.  As noted in *Factor 4*, previously the significant amount of time, effort, and resources of

20  this case had a direct effect on Plaintiffs' Counsels' time, the three-plus years of litigation, and

21  Counsel's efforts to recoup unpaid wages of employees is the type of priority work that should

22  be entitled to some premium.

23        Factor No. 8: *The Amount Involved and the Results Obtained.*  In *Johnson* the court was

24  considering a fee petition for a Title VII, 42 U.S.C.A. § 2000e-5(g) case that provided for

25  recovery of damages in addition to injunctive relief. *Johnson,* 488 F.2d at 718. This case is

26  analogous because of the unlawful employment allegations and remedial purposes of the

27  underlying law. *See, Monroe v. FTS USA, LLC*, 815 F.3d 1000 (6th Cir. 2016) (Congress passed

28  the FLSA with broad remedial intent to address unfair methods of competition in commerce that

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION
SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE
ENHANCEMENT PAYMENTS**

cause labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers; § 2(a), 29 U.S.C.A. § 202(a)). The *Johnson* court stated, "Although the Court should consider the amount of damages, or back pay awarded, that consideration should not obviate court scrutiny of the decision's effect on the law. If the decision corrects across-the-board discrimination affecting a large class of an employer's employees, the attorney's fee award should reflect the relief granted." *Id.* Here all multiple classes of employees including all Dancer/Dealers and any employee who was entitled to a meal payment may participate in the Settlement. This across the board result should be reflected in the attorney's fee award.

Factor No. 9: *The Experience, Reputation, and Ability of the Attorney.* The *Johnson* court also noted that an attorney who specializes in a particular area of law "may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience." *Johnson,* 488 F.2d at 718-19. The supporting declaration testimony of Class Counsel details the experience, reputation, and ability of the attorneys involved in this case; each Class Counsel specializing in wage and hour law. *See* Thierman Dec. at ¶¶ 4-12; Jones Dec." at ¶¶ 4-6.

Factor No. 10: *The "Undesirability" of the Case.* The *Johnson* court noted that attorneys who decide "to help eradicate discrimination [are] not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the court." *Johnson,* 488 F.2d at 719.  Lead Class Counsel, Mark R. Thierman has provided commentary on this vary subject. *See* Exhibit A to the Thierman Dec. at ¶ 26. "Don't Throw Away the Keys to the Courthouse."  Mr. Thierman opines, that the uncertainty in setting contingency fees has the effect of "benefit[ing] guilty defendants at the cost to individual workers and consumers. [Because] administrative agencies are too political, and/or too understaffed to pick up the slack." *Id.; cf. Stanford Daily v. Zurcher,* 64 F.R.D. 680, 686 (N.D. Cal. 1974) ("Court's application of the doctrine in the aid of private attorneys general helps attract attorneys to the enforcement if important constitutional principles and significant polices which might otherwise go unrepresented.) *citing* Comment, *Court Awarded Attorney's Fees and Equal Access to the Courts,* 122 U.Pa.L.Rev. 636, 650-652, 708-11 (1974).).    Mr.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

Thierman further states, "[t]he English style of jurisprudence has always relied upon private sector lawyers to accomplish public good" and that a "contingency fee lawyer provides access to affordable legal representation by agreeing to be paid as a percentage of the recovery, thus bearing the risk of losing the case." *Id; see also, Stanford,* 64 F.R.D. 686 (From the public's standpoint, the contingent fee helps equalize access of rich, middle-class, and poor individuals to the courts by making attorney decisions concerning representation turn on an action's merits rather than on the size of a client's income.) *citing* Comment, *Court Awarded Attorney's Fees and Equal Access to the Courts*, 122 U.Pa.L.Rev. 636, 650-652, 708-11 (1974)). The supporting declarations and articles provided substantiate the uncertainty in contingency fee cases and wage cases in general that contribute to the undesirability of this case.

Factor No. 11: *The Nature and Length of the Professional Relationship with the Client.* A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office. *Johnson,* 488 F.2d at 719. The nature of employment law class actions does not usually foster or provide for a lengthy professional relationship between the client employee and the attorney. However, based on the contingent nature of the case, it is in the attorney's best interest to maximize the recovery efforts for class members.

Factor No. 12: *Awards in Similar Cases.* The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit. *Johnson,* 488 F.2d at 719. The Ninth Circuit has set a benchmark of 25% as a percentage of the fund. *See Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir, 1990) (establishing benchmark percentage of 25% of the fund as normal class counsel percentage of fund award). This is an across the board benchmark, which is often adjusted upward or downward depending on the assessment of results, and the size of the fund. In cases under $10 million, the awards more frequently will exceed the 25% benchmark. *See Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 297 (N.D. Cal. 1995) ("the cases ... in which high percentages such as 30–50 percent of the fund were awarded involved relatively smaller funds of less than $10 million"). In addition to the percentage of the fund analysis that

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

clearly supports Class Counsel' fees request, Class Counsel's lodestar figure, further discussed below, supports the fees request.

### 2. Calculation of the Lodestar figure.

To determine the lodestar figure, the court multiplies the number of hours "reasonably expended" on the litigation by a "reasonable hourly rate." *See e.g. Intel Corp. v. Terabyte Int'l, Inc.* 6 F.3d 614, 622 (9th Cir. 1993) (*citing Hensley v. Eckerhart,* 461 U.S. 433, 103 S. Ct. 1933, 1939, (1983); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir. 1995).).   The Court should accept class counsel's explanation of fees as reasonable for all the reasons set forth above. This is especially true where, as here, the Court is not using the lodestar to determine the actual amount of fees to be awarded, but rather merely as a cross-check to the percentage-of-the-fund amount sought. *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 264 (N.D. Cal. 2015).

Class Counsel has provided a breakdown of the number of hours reasonably expended by the reasonable hourly rates charged by the attorney in the supporting declarations and exhibits. *See* Jones Dec. at ¶¶ 20-21.   Thus, the following calculation of the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate results in a lodestar of $332,351.40.   Jones Dec. at ¶¶ 20-21.   In addition to the fees requested as outlined in this chart, as Lead Class Counsel, Thierman Buck, LLP will incur additional time and expenses to prepare for and attend the final approval hearing, provide supplemental information and documentation for the final approval motion, provide the Court with any information or documentation required based on the final approval hearing, interact with the Claims Administrator and claimants with respect to actual class member payments, and respond to inquiries from individual class members about their payments. *Id.* at ¶ 23.

### E. Comparison of the Percentage of the Fund and Lodestar Crosscheck Supports Plaintiffs' Fee Request.

Courts may compare the two methods of calculating attorney's fees in determining whether fees are reasonable. *Fischel v. Equitable Life Assur. Soc'y of U.S.,* 307 F.3d 997, 1007 (9th Cir. 2002) *see Coordinated Pretrial,* 109 F.3d 602, 607 (9th Cir. 1997).

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email : info@thiermanbuck.com www.thiermanbuck.com

After determining the lodestar, the Court divides the total fees sought by the lodestar to arrive at the multiplier. *See Hopkins v. Stryker Sales Corp.,* No. 11–CV–02786–LHK, 2013 WL 496358, at *4 (N.D.Cal. Feb. 6, 2013) (citation omitted). "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on a contingent-fee case." *Id.* (citation omitted). If the multiplier falls within an acceptable range, it further supports the conclusion that the fees sought are, in fact, reasonable. *Id.* "Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases." *Hopkins,* 2013 WL 496358, at *4 (citation omitted); *see also Vizcaino,* 290 F.3d at 1051 n. 6 (finding that, in approximately 83 percent of the cases surveyed by the court, the multiplier was between 1.0 and 4.0 with a "bare majority ... 54% ... in the 1.5—3.0 range").

Here, applying the reasonable hourly fees that class counsel is seeking to the number of hours reasonably billed, class counsel's lodestar calculation is $332,351.40. Dividing the total fees sought of $250,000 by the lodestar of $332,351.40, results in a negative multiplier— meaning that Class Counsel has invested more attorney time into this case then they will receive in fees. A negative multiplier is thus presumptively reasonable. *Id.* Accordingly, the Court should approve Plaintiffs' requests for attorneys' fees in the amount of $250,000.

**C.    Class Counsel's Costs and Expenses Should Be Approved.**

The Settlement provided for the reimbursement of costs of up to $25,000. In the course of this litigation, Plaintiffs' counsel have incurred (and expect to incur) out-of-pocket costs and expenses of $32,308.15. *See* Jones Dec. at ¶ 22. The Class Notice plainly disclosed that up to $25,000.00 would be allocated to pay litigation costs advanced by Class Counsel. Accordingly, the Court should approve Plaintiffs' reduced costs and expenses request of $25,000.

**VIII.    FINAL CLASS CERTIFICATION SHOULD ALSO BE GRANTED.**

No Class Member has objected to class certification or to the appointment of Named Plaintiffs as Class representatives or to the appointment of Class Counsel. Accordingly, the Court should grant final certification of the Settlement Classes as defined in the Settlement.

/ / /

1

## IX.   <u>CONCLUSION.</u>

2

For all these reasons, and based on the information provided, Plaintiffs respectfully ask

3

the Court to enter the proposed Order of Final Approval and Judgment submitted

4

contemporaneously with this Motion.

5

6

Dated:  December 9, 2016.                              THIERMAN BUCK, LLP

7

8

By: <u>/s/*Leah L. Jones*</u>
       Mark R. Thierman

9

       Joshua D. Buck

10

       Leah L. Jones

11

       *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*THIERMAN BUCK LLP*
*7287 Lakeside Drive*
*Reno, NV 89511*
*(775) 284-1500 Fax (775) 703-5027*
*Email : info@thiermanbuck.com www.thiermanbuck.com*

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION
SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE
ENHANCEMENT PAYMENTS**